**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION AT DAYTON**

| | | |
|---|---|---|
| DAVID B.,[1] | : | Case No.  3:21-CV-112 |
| | : | |
| Plaintiff, | : | Magistrate Judge Peter B. Silvain, Jr. |
| | : | (by full consent of the parties) |
| vs. | : | |
| | : | |
| COMMISSIONER OF THE SOCIAL | : | |
| SECURITY ADMINISTRATION, | : | |
| | : | |
| Defendant. | : | |

**DECISION AND ENTRY**

Plaintiff David B. brings this case challenging the Social Security Administration's denial of his applications for period of disability, Disability Insurance Benefits, and Supplemental Security Income.  The case is before the Court upon Plaintiff's Statement of Errors (Doc. #14), the Commissioner's Memorandum in Opposition (Doc. #16), Plaintiff's Reply (Doc. #17), and the administrative record (Doc. #10).

I.      **Background**

The Social Security Administration provides Disability Insurance Benefits and Supplemental Security Income to individuals who are under a "disability," among other eligibility requirements.  *Bowen v. City of New York*, 476 U.S. 467, 470 (1986); *see* 42 U.S.C. §§ 423(a)(1), 1382(a).  The term "disability" encompasses "any medically determinable physical or mental

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to plaintiffs only by their first names and last initials.  *See* S.D. Ohio General Rule 22-01.

impairment" that precludes an applicant from performing "substantial gainful activity." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); *see Bowen*, 476 U.S. at 469-70.

In the present case, Plaintiff protectively filed his application for period of disability and Disability Insurance Benefits in May 2019 and for Supplemental Security Income benefits in October 2019, alleging disability due to degenerative disc disease.  (Doc. #10-6, *PageID* #233). After Plaintiff's applications were denied initially and upon reconsideration, he requested and received a hearing before Administrative Law Judge (ALJ) David Kurtz.   Thereafter, the ALJ issued a written decision, addressing each of the five sequential steps set forth in the Social Security Regulations.  *See* 20 C.F.R. §§ 404.1520, 419.920.[2]  He reached the following main conclusions:

Step 1:  Plaintiff has not engaged in substantial gainful activity since November 6, 2018, his alleged onset date.

Step 2:  Plaintiff has the following severe impairments: degenerative disc disease of the cervical and lumbar spine; degenerative joint disease of the shoulders; and migraine headaches.

Step 3:  Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one in the Commissioner's Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1.

Step 4:  His residual functional capacity (RFC), or the most he could do despite his impairments, *see Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002), consists of "light work … except no overhead reaching; frequent climbing of ramps and stairs; no climbing of ladders, ropes, or scaffolds; occasional stooping; no more than moderate exposure to noise; avoid work outdoors in bright sunshine; avoid bright or flashing lights such as would be experienced in welding or cutting metals."

Plaintiff is unable to perform any past relevant work.

---

[2] The remaining citations will identify the pertinent Disability Insurance Benefits Regulations with full knowledge of the corresponding Supplemental Security Income Regulations.

Step 5:        Considering his age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform.

(Doc. #10, *PageID* #s 56-61).  Based on these findings, the ALJ concluded that Plaintiff has not been disabled from November 6, 2018, through the date of his decision.  *Id.* at 61-62.

The evidence of record is adequately summarized in the ALJ's decision (Doc. #10, *PageID* #s 54-62), Plaintiff's Statement of Errors (Doc. #14), the Commissioner's Memorandum in Opposition (Doc. #16), and Plaintiff's Reply (Doc. #17).  To the extent that additional facts are relevant, they will be summarized in the discussion section below.

## II.     **Standard of Review**

Judicial review of an ALJ's decision is limited to whether the ALJ's finding are supported by substantial evidence and whether the ALJ applied the correct legal standards.  *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (citing *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)); *see Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007). Substantial evidence is such "relevant evidence that a reasonable mind might accept as adequate to support a conclusion."  *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014) (citing *Rogers v. Comm'r of Soc. Sec.,* 486 F.3d 234, 241 (6th Cir. 2007)).  It is "less than a preponderance but more than a scintilla." *Id.*

The second judicial inquiry—reviewing the correctness of the ALJ's legal analysis—may result in reversal even if the ALJ's decision is supported by substantial evidence in the record. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009).  Under this review, "a decision of the Commissioner will not be upheld where the [Social Security Administration] fails to follow

its own regulations and where that error prejudices a claimant on the merits or deprives [Plaintiff] of a substantial right." *Bowen*, 478 F.3d at 746 (citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546-47 (6th Cir. 2004)).

### III.    Discussion

Plaintiff argues that the ALJ erred in evaluating his RFC and symptom severity by unreasonably finding him capable of sustaining competitive, full-time light exertion work. (Doc. #14, *PageID* #s 896-97). The Commissioner maintains that substantial evidence supports the ALJ's decision. (Doc. #16, *PageID* #s 905-08).

An individual's RFC "is defined as the most [he] can still do despite the physical and mental limitations resulting from [his] impairments." *Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 155 (6th Cir. 2009); *see also* 20 C.F.R. § 404.1545(a). The ALJ is responsible for assessing an individual's RFC. 20 C.F.R. § 404.1545(c) ("If your case is at the administrative law judge hearing level …, the administrative law judge … is responsible for assessing your residual functional capacity."). The ALJ's RFC assessment must be "based on all of the relevant evidence in the case record, including information about the individual's symptoms and any 'medical source statements' -- i.e., opinions about what the individual can still do despite his or her impairment(s) -- submitted by an individual's treating source or other acceptable medical sources." Soc. Sec. R. 96-8p, 1996 WL 374184, *2 (footnote omitted). "An administrative law judge is only required to include in the residual functional capacity those limitations he finds credible and supported by the record." *Lipanye v. Comm'r of Soc. Sec.*, 802 F. App'x 165, 170 (6th Cir. 2020) (citing *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993)). If substantial evidence

supports the ALJ's RFC assessment, "the Court defers to that determination even in the face of substantial evidence supporting the opposite conclusion." *Vickers v. Comm'r of Soc. Sec.*, No. 20-1935, 2021 WL 4468414, at \*4–5 (6th Cir. July 12, 2021) (citing *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405-06 (6th Cir. 2009)).

Plaintiff asserts that the medical evidence is not consistent with an ability to sustain full-time competitive light exertion work. (Doc. #14, *PageID* #s 896-97). Plaintiff's argument can be divided into two primary subtopics: back impairments and dizziness/falls.

In support of Plaintiff's argument that the ALJ erred in his assessment of Plaintiff's RFC as it relates to his back impairments, Plaintiff points to MRIs of his cervical spine and lumbar spine and medical records showing he underwent C5-C7 anterior cervical decompression and fusion in April 2019 and decompressive lumbar laminectomy surgery on L3-L4 and L4-L5 with medial facetectomies and bilateral L3 and L4 foraminotomies in October 2019. (Doc. #24, *PageID* #896) (citing Doc. #10, *PageID* #s 297, 419, 552, 603). Additionally, Plaintiff reported to his physician that his back pain was improved by sitting and exacerbated by bending, lifting, and sitting or standing for too long. *Id.* (citing Doc. #10, *PageID* #439). Plaintiff notes that even after two back surgeries, he was prescribed a shower chair with back support and continued to report to medical providers that he had back pain. *Id.* at 896-97 (citing Doc. #10, *PageID* #s 552, 570, 667, 680-81). Plaintiff asserts that this medical evidence is consistent with his testimony that he "spends a lot of time sitting back in a recliner to try and keep his back stretched as far as he can. *Id.* at 897 (citing Doc. #10, *PageID* #s 88-89).

As noted above, the ALJ found that Plaintiff had the RFC to perform light work with certain limitations.  In arriving at the RFC, the ALJ relied on the opinions of the record-reviewing physicians, William Bolz, M.D., and Elaine Lewis, M.D.  Both opined that Plaintiff could lift and/or carry twenty pounds occasionally and ten pounds frequently.  (Doc. #10, *PageID* #s 103, 114).  He could stand and/or walk for six hours in an eight-hour workday and sit for six hours.  *Id.* at 104, 114.  They opined that Plaintiff could frequently climb ramps and stairs, occasionally stoop, and never climb ladders, ropes or scaffolds.  *Id.* at 104, 115.

The ALJ found that the opinions of Dr. Bolz and Dr. Lewis were "partially persuasive." *Id.* at 59.  He explained that their opinions were supported by detailed explanation.  Further, their opined exertional limitations were appropriate and consistent with record.  However, based on the evidence of Plaintiff's history of shoulder infraspinatus tendinopathy, mild inflammatory changes of the acromioclavicular joint, and migraines, the ALJ concluded that greater limitations, including no overhead reaching and avoidance of noise and light, were necessary.  *Id.* at 59-60.

The ALJ also concluded that the post-operative limitations from Plaintiff's treatment providers were "partially persuasive." *Id.* at 60.  In November 2019, Plaintiff's medical provider recommended that he avoid any excessive bending or twisting of the hips or any excessive heavy lifting of more than fifteen to twenty pounds for at least six weeks.  *Id.* at 681.  In February 2020, the recommendations included a course of physical therapy, easing into regular activities as tolerated, and avoiding any significant heavy lifting.  *Id.* at 670.  The ALJ noted that some limitations were only temporary, "and as such are not supportive of durational limitations." *Id.* at

6

60.  However, the ALJ found that the "encouragement to avoid any significant heavy lifting is supported and consistent with his history of surgery." *Id.* (internal citations omitted).

In determining Plaintiff's RFC, the ALJ also considered Plaintiff's testimony regarding his limitations.  The ALJ concluded that Plaintiff's medically determinable impairments could reasonably be expected to cause his symptoms but that his description of the intensity, persistence, and limiting effects of their symptoms were not entirely consistent with the evidence in the record.

In support, the ALJ addressed the medical evidence of record related to Plaintiff's back and neck problems.  For example, he noted that in November 2019, six weeks after Plaintiff underwent L3-5 laminectomy, decompression, and fusion, Plaintiff reported that his back felt "wonderful," and he was happy with the progress he had made since surgery. *Id.* at 59.  Further, although Plaintiff reported twitching in his leg, he denied any new radicular pain, weakness, numbness, tingling, and back pain. *Id.*  His gait was smooth and steady, his muscle strength was 5/5 in his upper and lower extremities, and sensation was equal and symmetrical in his bilateral lower extremities. *Id.*  At Plaintiff's three-month follow up appointment, he reported he was doing well although he continued to have issues with stiffness and overall generalized weakness secondary to inactivity. *Id.*  His physical examination remained unremarkable.  His physician recommended physical therapy to strengthen his lower extremities and lower back.

The ALJ reasonably considered the medical opinions, Plaintiff's testimony, and the medical evidence of record regarding his back impairments.  Although there is some evidence that supports Plaintiff's argument that he is unable to perform light work, the Court's review is limited to determining whether substantial evidence supported the ALJ's residual functional capacity

7

determination. *See Blakley*, 581 F.3d at 406. Considering the above evidence, which the ALJ carefully documented as support for the RFC finding, the undersigned finds that substantial evidence supports the ALJ's decision. *See Mokbel-Aljahmi v. Comm'r of Soc. Sec.*, 732 F. App'x 395, 401 (6th Cir. 2018); *Vickers v. Comm'r of Soc. Sec.*, No. 20-1935, 2021 WL 4468414, at *4-5 (6th Cir. July 12, 2021).

Turning to Plaintiff's reported dizziness and falls, Plaintiff points to evidence from two appointments in support of his argument that the ALJ erred in his assessment of Plaintiff's RFC. First, in November 2019, Plaintiff reported that he fell a few weeks after his surgery and, shortly thereafter, tripped and fell when getting out of his car. (Doc. #10, *PageID* #680). However, Plaintiff also indicated that he had improved since his falls. *Id.* Second, in February 2020, Plaintiff reported "recent episodes of dizziness anytime he stands up." *Id.* at 669. He indicated that he had recently fallen and had lost consciousness on a few occasions. *Id.* The medical provider noted that he "is supposed to follow-up with ENT for evaluation for questionable vertigo." *Id.*

Plaintiff argues that this evidence is consistent with his testimony. At the hearing before ALJ Kurtz, Plaintiff testified that he has some problems with dizziness. *Id.* at 79-80. He explained that he was walking to the bathroom one night and the "next thing I know I was laying on the ground due to the fact that I completely blacked out …." *Id.* at 80. He went to the emergency room, and they diagnosed vertigo and gave him medicine to take any time he felt dizzy. *Id.* Plaintiff said he still has episodes when he gets up to walk somewhere where he feels "extremely dizzy" and has to hold on to something for thirty seconds to a minute before the dizziness subsides. *Id.* He experiences dizziness "on a regular basis" and had a balance test scheduled for June 11 to

determine the cause.  *Id.*  According to Plaintiff, the medication was helpful when he took it, but he did not have any and needed to get a refill.  *Id.* at 81.

The undersigned also notes that in January 2020, Plaintiff presented to the emergency department of Troy Hospital with acute dizziness.  *Id.* at 494.  He reported having several episodes within a few days.  *Id.*  He also indicated that he is sometimes lightheaded when he sits up and sometimes the room spins.  *Id.*  Although Plaintiff had a "concerning episode," he had no vision changes, no coordination problems, and was able to walk.  *Id.*  The physician indicated that there was "[n]o evidence of central causes of symptoms …."  *Id.*  However, the plan was for symptomatic treatment and follow-up care.  *Id.*

Although the ALJ addressed the medical records from the two appointments Plaintiff points to, he did not refer Plaintiff's reported dizziness or falls.  Similarly, the ALJ summarized some of Plaintiff's testimony but did not recognize Plaintiff's statements concerning dizziness and falls.  *Id.* at 58.  However, the ALJ's failure to specifically discuss this evidence does not necessarily establish that the ALJ committed reversible error.  *See Daniels v. Comm'r of Soc. Sec.*, 152 F. App'x 485, 489 (6th Cir. 2005) ("[a]lthough required to develop the record fully and fairly, an ALJ is not required to discuss all the evidence submitted, and an ALJ's failure to cite specific evidence does not indicate that it was not considered.") (quoting *Simons v. Barnhart*, 114 F. App'x 727, 733 (6th Cir. 2004)) (quotation marks omitted); *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) ("[A]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (citation omitted).

Nonetheless, to the extent that the ALJ erred in ignoring or overlooking Plaintiff's dizziness or falls, the error is harmless.  Plaintiff has not shown dizziness has caused any additional limitations that were not accounted for in the ALJ's RFC assessment.  No physician opined that Plaintiff has functional limitations as a result of his dizziness or falls.  *Vickers v. Comm'r of Soc. Sec.*, No. 20-1935, 2021 WL 4468414, at \*4–5 (6th Cir. July 12, 2021) ("It is significant that none of the medical reports indicated Vickers's level of functioning or limitations posed by his impairments.").

Furthermore, Plaintiff does not point to any evidence that he received a diagnosis related to his dizziness or falling.  "If an alleged impairment is not medically determinable, an ALJ need not consider that impairment in assessing the RFC."  *Jones v. Comm'r of Soc. Sec.*, No. 3:15-CV-00428, 2017 WL 540923, at \*6 (S.D. Ohio Feb. 10, 2017), *report and recommendation adopted sub nom. Jones v. Berryhill*, No. 3:15-CV-428, 2017 WL 1196179 (S.D. Ohio Mar. 31, 2017) (citing *Rouse v. Comm'r of Soc. Sec.*, No. 2:16-CV-0223, 2017 WL 163384, at \*4 (S.D. Ohio Jan. 17, 2017) (stating that a "claimed condition which is not 'medically determinable' need not be considered at all" in determining a claimant's RFC); 20 C.F.R. §§ 404.1527(a)(1), 20 C.F.R. § 404.1545(a)(2)).  Although Plaintiff testified that he had a balance test schedule for June, the record does not include the results of the alleged testing.  Further, there is no evidence that Plaintiff received a diagnosis.

Additionally, as the Commissioner correctly notes, Plaintiff has not shown that his dizziness and falls lasted, or would be expected to last, for at least twelve months.  (Doc. #16, *PageID* #s 906-07) (citing 20 C.F.R. § 404.1509) ("Unless your impairment is expected to result

in death, it must have lasted or must be expected to last for a continuous period of at least 12 months.").

For these reasons, the undersigned finds that substantial evidence supports the ALJ's assessment of Plaintiff's RFC.  Based on the foregoing, Plaintiff's Statement of Errors is without merit.

**IT IS THEREFORE ORDERED THAT:**

1.  Plaintiff's Statement of Errors (Doc. #14) is **OVERRULED;**

2.  The Commissioner's non-disability determination be **AFFIRMED**; and

3.  The case be terminated on the docket of this Court.

September 20, 2022                                              *s/Peter B. Silvain, Jr.*
                                                               Peter B. Silvain, Jr.
                                                               United States Magistrate Judge